Western Anthracite Coal & Coke Co. v. Beaver.

## ·Western Anthracite Coal & C. Co. v. Alice Beaver et al.

1. MINES AND MINING—*Requisites of a Recovery under the Miners Act.*—To sustain a recovery by a representative of a deceased coal miner, under the miners act, it must appear that the proprietor of the mine willfully failed and neglected to deliver to the deceased miner, props and caps of sufficient length and dimensions with which to prop, etc., and that because of such willful failure and neglect the deceased met his death.

2. SAME—*When Contributory Negligence is No Defense.*—When willful neglect or omission to discharge a statutory duty is alleged and proved as a cause of action, contributory negligence on the part of the person injured in consequence of such neglect constitutes no defense.

3. TRIALS—*Presumptions Where the Trial is Without a Jury.*—When oral evidence is heard by a judge, his conclusions will not be disturbed unless clearly against the weight of the evidence.

**Action under the Miners Act.**—Appeal from the Circuit Court of Randolph County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the August term, 1900. Affirmed. Opinion filed March 11, 1901.

WISE & McNULTY, attorneys for appellant.

HAMILL & BORDERS and A. E. CRISSLER, attorneys for appellees.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Jury waived and trial by the court, upon the first count of the amended declaration, which, after preliminary averments, alleges in substance, that on May 11, 1899, Henry Beaver, deceased, was in defendant's employ as a coal miner; that Beaver requested defendant to furnish props and cap pieces of sufficient length and dimensions to prop a dangerous rock or " clod," and that, contrary to the statute, the defendant willfully failed and omitted to furnish said props and cap pieces as requested, of sufficient length and dimensions, and that because of this willful failure and omission on the part of defendant, said Beaver was killed by a falling rock or " clod," etc.

Judgment for plaintiffs for $4,000 and costs.

Defendant excepted and prayed an appeal.

The propositions of law asked by appellant were held by the court as asked.

The alleged error pressed before this court, is the insufficiency of evidence to sustain the finding of the trial judge.

To sustain this finding it must appear by a preponderance of the evidence that appellant "willfully failed and neglected to deliver to the deceased props and caps of sufficient length and dimensions with which to prop," etc., and that because of said "willful failure and neglect," the deceased met his death.

It is insisted by counsel for appellant that if contributory negligence on the part of the deceased is shown by the evidence, a recovery can not be had. The trial court seems to have taken this view, as the following proposition asked by appellant was held :

"The court holds the law to be, that if Beaver, the deceased, knew the rock or substance that fell upon him was where it was, and that the roof, because of it, was in a dangerous condition, and further knew that it was dangerous to work under the said clod or substance, and that he voluntarily and needlessly and carelessly went under the same, when he could have been in the performance of his work in a place of safety, and was killed by the falling of said clod or substance, then, in going under the same, he was guilty of contributory negligence, and if he was injured in consequence thereof, the plaintiffs in this case can not recover."

If this proposition states the law correctly, we can not reconcile the finding of the court with the evidence and the law. It is apparent from the evidence that the deceased knew of the danger of the rock's falling, which falling caused his death; and yet, so knowing, took his seat under it while sharpening a tool, when there appears to have been no reason why he should have sat in that dangerous place. But we do not understand that when "willful neglect or omission" to discharge a statutory duty is alleged and proved, that contributory negligence on the part of the person injured in consequence of such neglect, constitutes

a defense.  Carterville Coal Co. v. Abbott, 181 Ill. 495; Odin Coal Co. v. Denman, 185 Ill. 413.

The case is to be considered, then, upon the question as to whether the averment of willful negligence as charged in the declaration is proved by a preponderance of the evidence.

Beaver, the deceased, and his partner or "buddie," worked together in a room in appellant's mine.  At the right-hand side of this room the roof was about five and one-half feet above the floor, while on the left-hand side it was about six and one-half feet, except where bastard rock or slate was attached to the roof.  At the time of the death of Beaver a part of the coal next the floor in the left-hand corner had not been mined.  This unmined portion was between one foot and four feet thick, estimates of witnesses differing.  It extended over the floor of that part of the room about four and one-half feet.  Over this unmined coal on the floor of the room was the rock or "clod" which fell and killed the deceased.

The evidence tends to prove that the deceased, both on the day before his death, May 10th, and on the day of his death, May 11th, notified appellant to furnish props.

To review the evidence in detail would serve no useful purpose.

The conflict in the testimony of Woodside, deceased's "buddie," and the testimony of Winterbottom, the mine manager, is irreconcilable.  They are the most material witnesses in the case.  If Woodside's testimony is true, the judgment should stand.  The court heard both witnesses and evidently believed Woodside.  There are circumstances in evidence which tend to corroborate his testimony.  When Winterbottom visited the room where Woodside and the deceased were working, about noon on the day before the accident, he found fault because of the part of the coal left unmined on the left side of the room.  He testifies that, in reply to his complaint, Woodside blamed Beaver and Beaver blamed Woodside.  That he did not consider the overhanging rock on the left side to be dangerous.  He further testifies that there were caps and props at that

time in the room, and that some of the props were six and one-half feet in length. Woodside, on the other hand, testifies that, in answer to Winterbottom's complaint, and the order to mine what was left on the floor, Beaver told him it was dangerous until they had props of sufficient length to prop up the rock, and to send props of the right length, and they would work that side of the room, and that Winterbottom said he would do it. He further testifies that props were not sent that day, and that on the next morning, the day of the accident, before going into the mine Beaver put an order on the board for six and one-half foot props. This was where such orders should be placed.

Henry Cosgrove testifies to seeing Beaver writing on the board, but don't know what length of props he put on.

This testimony in reference to ordering props on the morning of the 11th is not contradicted. If there was a reason why the coal was not all mined on the left side of the room, it is more likely that Woodside and Beaver would have stated the reasons to the manager when upbraiding them for not having mined it, than that each, without stating any reason, would have blamed the other. That there was a reason, sufficiently appears from the falling of the rock on the next day. In the judgment of Beaver there were not props on hand of sufficient length on the 10th of May. This is apparent from the fact that he ordered props on the morning of the 11th, before again entering the mine. If props were lacking on the 10th, and that fact stated to the manager as the reason why the coal was not mined, it is reasonable to believe, as Woodside testifies, that the manager promised that they should be furnished. It was the business of Leeman, an employe and a witness for appellant, to send props when ordered on the board at the mouth of the mine. He testifies that he furnished all the props ordered on the morning of the 11th, but it is somewhat significant, that although this matter of props appears to have been investigated by appellant immediately after the accident, that its witness has no specific

recollection of props furnished upon Beaver's order. It is also significant that other witnesses, including the mine inspector and a committee, taken by appellant to the room after the accident, do not testify to finding six and one-half feet props there. Winterbottom testifies that such props were there; Woodside testifies that they were not. Menard, the car driver, testifies that he delivered props at the mouth of the entry to the room on the 11th, but he does not testify as to their length.

Whether five and a half foot props, using caps, would have answered the purpose, was an issue in the case. It is as clearly the duty of the mine operator to furnish props of sufficient dimensions as it is to furnish props at all.

The trial court heard witnesses on both sides of this issue, as well as upon other issues, and found against appellant. In view of the conflict in the evidence we can not say that his findings of fact are unwarranted.

When oral evidence is heard by a judge his conclusions will not be disturbed unless clearly against the weight of the evidence. Burgett v. Osborn, 172 Ill. 227; Berkey & Gay Fur. Co. v. Thein et al., 89 Ill. App. 207.

Judgment affirmed.