## Chicago Union Traction Company v. Jeremiah Brody.

### Gen. No. 12,114.

1. FINDING OF JUDGE—*when not disturbed.* The finding of the trial judge will not be set aside on appeal where the evidence is conflicting, unless the same is palpably against the weight of the evidence.

2. JUDGMENT—*when not excessive.* A judgment for $640 rendered in favor of the father of a minor child who had received personal injuries, held not excessive where predicated upon the doctor's bill for which the father was liable and upon the wages which prior to the injury had been given by the boy to his father which were lost by reason of the injury.

3. JUDGMENT—*when estoppel to complain of particular item entering into, arises.* Where a particular judgment is made up of several items, one of which upon the trial was conceded, the party making such concession cannot, upon appeal, question such item when allowed.

Action in tort. Appeal from the Circuit Court of Cook County; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed November 2, 1905.

JOHN A. ROSE, HENRY W. BRANT and ALBERT M. CROSS, for appellant; W. W. GURLEY, of counsel.

EDWARD MAHER and GEORGE LANDER TURNBULL, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The plaintiff below brought suit as the father of Joseph Brody, a minor, to recover damages which it is alleged he sustained through loss of wages, etc., because of an injury to the minor caused, it is said, by the negligence of appellant.

A jury was waived and the cause was submitted to the court, who after hearing the evidence and the arguments of counsel entered a judgment and finding for the plaintiff in the sum of $640.

In this court appellant contends that the finding is against the evidence, and that the damages are excessive.

The evidence of the plaintiff tended to prove that February 20, 1901, the minor was riding in a one-horse wagon driven by William Meeker, the horse being on a trot, west along Grand boulevard in the city of Chicago; that appellant was operating a double-track street railway in that highway; that the wagon was in the west-bound track; that there was snow on the ground, which appellant had theretofore swept to the sides of the roadway; that after the wagon had passed Noble street, an intersecting highway, a west-bound car operated by appellant overtook the wagon and followed it only a few feet to the rear until the next cross-street, Armour street, was reached, where Meeker attempted to turn out of the track, when the car struck the wagon, pushing it along the track and throwing the minor from the wagon seat to the ground, thereby inflicting injuries upon him which disabled him for more than a year next following; that the motorman and Meeker exchanged words

before the wagon reached Armour street, the former calling to Meeker to get out of the track, and the latter saying he could not turn out until he reached Armour street, when he would do so; that from where the car came up to the wagon to the place of the accident the east-bound track was occupied by a two-horse wagon also going west, driven by Thomas Burgess; that the minor at that time was nineteen years of age, and had been earning $7.50 per week, and that prior to the accident he gave his wages to his father.

The evidence of appellant tended to prove that when the car came up behind the wagon Meeker declined or refused to vacate the track; that the car trailed along behind the wagon a few feet from it, going very slowly, waiting for Meeker to turn out; that Meeker suddenly stopped his wagon about fifteen feet from the crossing at Armour street to permit the minor to alight to go to his home; that the car touched the wagon so slightly as not to injure the wagon or the car in the least; that immediately thereafter the minor went to his home, Meeker drove on, and the car went on as if nothing had happened; and that if the minor received any injuries while alighting from the wagon, they were the result of his falling from it.

From an examination of the record in this case we are satisfied the contention of appellant that the finding of the court is against the evidence, is not well founded. Joseph Brody was riding in Meeker's wagon as a passenger. He had no control over the horse; Meeker was driving. If Meeker was guilty of negligence in the premises—a fact we do not find it necessary to pass on—that negligence is not the negligence of Joseph Brody and legally it cannot be charged up to him.

The preponderance of the evidence is that the wagon was struck because the motorman followed it so closely with his car that when the wagon slowed down to leave the track at or near Armour street, the car ran into it. It may be that at the moment the car struck the wagon Joseph Brody was preparing to alight, and for that reason

was more easily thrown down. He had, however, a right to leave the wagon at any point he wished, and the fact that he was attempting to do so when the blow came does not relieve appellant from the consequences of its negligence.

Further, this case was submitted to the court for trial. The learned judge saw and heard the witnesses. Many things appear in an oral examination, tending to influence the finding of the court or jury, which cannot be put upon paper, and thus brought to our attention. Out of this disability, which necessarily inheres in such cases in an appellate tribunal, has arisen the rule that where the evidence as to a particular issue is conflicting, and the trial is without a jury, a new trial will not be granted unless the finding of the court is palpably against the weight of the evidence. McClelland v. Mitchell, 82 Ill. 35; Corwith v. Colter, 82 Ill. 585; Johnson v. Smallwood, 88 Ill. 73; Radeke v. Cook, 21 Ill. App. 597.

This principle is otherwise stated in the rule that "when the cause is tried by the court, his findings of fact have the same force as has the verdict of a jury." Fish v. Hopping, 169 Ill. 108; Jones v. Smith, 37 Ill. App. 169; Braun v. Winans, 37 Ill. App. 248; Sawyer v. Hazlitt, 37 Ill. App. 474; Keating v. Springer, 44 Ill. App. 549; Berkey v. Thein, 89 Ill. App. 207; Hays v. Langley, 90 Ill. App. 500; Western, etc., v. Beaver, 95 Ill. App. 95; Greer v. Clay, 99 Ill. App. 207; Kaestner v. Oldham, 102 Ill. App. 373. We cannot reverse this case upon the ground that the finding is against the weight of the evidence.

The damages found by the court are made up of two items—the doctor's bill and the wages of the minor. Dr. Johnson, the attending surgeon, says that the operation which he performed was reasonably and customarily worth $150; that the minor came to him for treatment "somewhere in the neighborhood of sixty and seventy times," and that he charged $250 for the operation and subsequent treatment, which was a fair, reasonable and customary charge for the services he performed. This evidence is not contradicted.

Appellee testified, and this is not gainsaid: "I sent him (the son) to the doctor. I told the doctor to take good care of the arm, and that I would pay him for it."

The preponderance of the evidence is that the minor for a long period of time before his injury was in receipt of wages at the rate of $1.50 per day; that from the date of his hurt he was unable to work, because of that hurt, for more than one year next following; that the surgeon did not feel safe to say there was a permanent union of the bones of the arm for nearly a year after the operation, and that he advised the minor to rest the arm until there was a thorough union. There is no contradiction of this evidence in the record.

Again, it seems to us that, in common fairness, appellant is estopped to say the finding as to the amount of wages lost by this disability is excessive; for in the trial Mr. Baily, counsel for appellant, when this question of wages was in issue, said, in open court: "There is only one thing I am surprised about. I didn't think there would be any controversy about the amount of money he (Joseph Brody) earned. This Spring But. Co. showed us their books. He (Brody) quit working there on the 22nd of November. I am willing that he may charge $7.50, because that is what their books show he did earn, and that he quit work there on the 22nd of November. There is a question of whether or not we ought to be charged with all of that time or not, but then I will not cavil about that if these gentlemen (counsel for appellee) will get down to the other proposition" (the proposition of $9 or $7.50 per week).

Mr. Turnbull (for appellee): "I have found out the reason for that from him (Brody). He says they didn't work Saturdays."

The Court: "Then you are both agreed on $7.50 a week for one year."

Mr. Baily: "And $50 doctor's fees."

The Court: " $350 I understood. (To the doctor:) How much did you say, doctor?"

Dr. Johnson: "$250."

Mr. Baily: "Well, then, I want to cross-examine on that. I thought he said $50."

At $7.50 per week for one year the wages amount to $390. This sum added to the charge of the surgeon amounts to $640, the finding of damages by the court.

There is no reversible error in this record, and we therefore affirm the judgment of the Circuit Court.

*Affirmed.*