Johnson, J.,
dissenting. I am unable to concur in this judgment.
The petition averred that plaintiff’s intestate was a boy sixteen years old and left no widow or lineal heirs. It alleged a number of acts of negligence, among which were allegations of failure to comply with the provisions of the mining act *452 passed April 5, 1910 (101 O. L., 86), none of which acts was alleged to be willful.
The common pleas court sustained a demurrer to the petition and this judgment was affirmed by the circuit court.
Both rulings were on the ground that Section 972 of the mining act controlled the case; that the section named gives the exclusive right of action to the widow and lineal heirs of the person killed and that the administratrix of deceased could not maintain the action on behalf of the parents and next of kin, there being no widow or lineal heirs.
Section 972 is as follows: “In case of an injury to persons or property, occasioned by a violation of any of the provisions of this act, or any willful failure to comply with any provision of this act by any owner, lessee or agent of a mine, a right of action shall accrue to the person injured, for any direct damage he may have sustained thereby. In case of loss of life, by reason of such willful neglect or failure, a right of action shall accrue to the widow and lineal heirs of the person whose life has been lost, for like recovery of damages for the injury they shall have sustained.”
Sections 10770 and 10772, General Code, give a right of action, where the death of a person is caused by the wrongful act, neglect or default of another, to the personal representative of the deceased for the benefit of the wife and children, or if there be neither, then to the parents and next of kin.
This law, known as Lord Campbell’s act, was in force long before the passage of the mining act *453 and was repealed and re-enacted after the passage of the mining act.
Section 972 of the mining act is a special enactment and Lord Campbell’s act is a general one.
Where the facts of a case bring it within both a special and a general law the special law will control in so far as its provisions differ from those of the general law.
But in such case the special enactment will not be construed to control cases not specifically included in its provisions.
In what respects does Section 972 differ from Sections 10770 and 10772, General Code?
First: it confers upon a special class of designated persons, namely “the widow and lineal heirs” a right of action for their loss.
Second: it places no limit on the amount of the recovery and does not specially limit the time in which the suit must be brought.
Third: it confers this right of action on the class named, in case of loss of life by reason of willful neglect or failure to comply with the provisions of the mining act.
In order that Section 972 shall control a case to the exclusion of Sections 10770 and 10772, the facts must be such as will bring the case within the provisions of the special section. That is, there must be in existence some person or persons included in the class in which the right of action is lodged, and there must have been a willful neglect or failure to comply with the law.
These conditions being absent, the general statute will control a case within its terms.
*454 The fact that the legislature re-enacted the general law after the enactment of the special statute is a sufficient manifestation of its intention that the former shall apply to and control all cases which it has not provided for in the special law.
In Brown v. Sunday Creek Co., 165 Fed. Rep., 505, Judge Sater says: “Consideration of the demurrer necessarily involves an analysis of the several above-mentioned sections of the Ohio statute. Sections 6134 and 6135 are general, while those relating to mines and miners are special. The latter control as to all cases especially enumerated in them, while the former sections, being general, embrace all other cases. * * * In the former sections the amount recoverable is limited to $10,000; in the latter it is not limited. The former sections give a right of action for mere negligence. * * * Section 301 [which is now Section 972], in case of loss of life, by express language gives such right for willful negligence only.”
In Odin Coal Co. v. Denman, 185 Ill., 413, the court, at page 416, states that the mining statute of Illinois contains the following provision: “Sec. 14. For any injury to person or property occasioned by any willful violations of this act or willful failure to comply with any of its provisions, a right of action shall accrue,” etc. And the court held that: “A mine owner is charged with knowledge of the provisions of the law concerning the safety of miners, and his intentional omission of a statutory duty, such as by substituting some plan of his own, is a ‘willful’ omission, within the *455 meaning of that word as employed in the act on mines.” The court say: “An act consciously omitted is willfully omitted, in the meaning of the word ‘willful’ as used in these enactments of our legislature relative to the duty of mine owners. In Carterville Coal Co. v. Abbott, 181 Ill., 495, we said: ‘Where an owner, operator or manager so constructs or equips his mine that he knowingly operates it without conforming to the provisions of this act, he willfully disregards its provisions and willfully disregards the safety of miners employed therein.’ ”
The court points out in its opinion that the omission in that case was not through mere inadvertence, but was intentional.
I do not think that a simple allegation of failure and neglect to comply with a statutory duty makes a case of willful failure to so comply. To so hold would be in effect to entirely erase the word “willful” from the statute.
The defendant mine owner, under our statute, would be entitled to show that the act of failure was not willful or intentional, but that it was merely negative and was the result of mere negligence. He might show that he actively and affirmatively intended to do the thing required by the statute and that he had given positive directions to employes to perform it, but that in the doing of it there was mere negligence and through this negligence a failure to comply with the requirements of the law. Such a failure would not' amount within the meaning of the statute to a willful failure.
*456 The law does not favor repeals by implication. This law should not be held to repeal by implication Sections 10770 and 10772, except so far as may be necessary to give effect to the provisions of Section 972. But in all cases as to which Section 972 does not apply, Sections 10770 and 10772 should be held to be in full force.
All of these sections were in force at the time the plaintiff’s intestate in this case was killed. If he had left a widow or lineal heirs, and they could have shown that his death was brought about by the willful failure of the mine owner to comply with the provisions of the mining law as to safety of employes, they could have maintained an action in their own names, not limited in amount, and their right of action would have been exclusive.
But as the decedent left no widow or lineal heirs, if his death was caused by a wrongful act, neglect or default of the mine owner, Section 972 has no application to the case and his administrator would be entitled, under Sections 10770 and 10772, to maintain an action for the benefit of the parents and next of kin of the deceased.
To hold otherwise is to conclude that the legislature intended that a parent dependent on an unmarried son for support, may maintain an action for death caused by mere negligence of another in all ordinary vocations and circumstances, but that for the death of such an unmarried son in a mine, caused by any negligence whatever, the parent shall have no relief.
Wanamaker, J., concurs in this dissent.