## THE ODIN COAL COMPANY
### *v.*
### EFFIE DENMAN.

*Opinion filed April 17, 1900.*

1. MINES—*whether top of shaft is at surface of ground or above is a question for the jury.* Whether the top of the shaft of a particular mine is at the surface of the ground or has been established at a point above the surface by the erection of structures and by the manner in which the mine is operated is a question for the jury, under the evidence.

2. SAME—*intentional omission of statutory duty by mine owner is willful.* A mine owner is charged with knowledge of the provisions of the law concerning the safety of miners, and his intentional omission of a statutory duty, such as by substituting some plan of his own, is a "willful" omission, within the meaning of that word as employed in the act on mines.

3. NEGLIGENCE—*in action for omission of statutory duty contributory negligence cannot be invoked.* In an action for the death of a miner, alleged to have resulted from defendant's willful omission to furnish a sufficient light at the top of the shaft, as required by law, the contributory negligence of the deceased cannot be invoked.

4. EVIDENCE—*when evidence of intention to comply with the statute is inadmissible.* In an action against a mine owner for willful omission of a statutory duty, evidence of the defendant's intention to comply with the statute is inadmissible where the charge of the declaration does not involve evil or wrongful intent but only conscious acts of omission, and not mere inadvertence.

5. SAME—*when motion to exclude the evidence is properly denied.* In an action for damages for the death of a miner, alleged to have resulted from defendant's willful failure to provide a sufficient light at the top of the shaft, a motion to exclude the evidence and direct a verdict for defendant is properly denied, where it appears that the deceased attempted, according to custom, to step from the cage at the surface of the ground; that though it was night time there was no light, the lantern bearer being absent, and that, the cage having passed above the surface of the ground, the deceased failed to gain a footing and fell down the shaft.

*Odin Coal Co.* v. *Denman,* 84 Ill. App. 190, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. W. M. FARMER, Judge, presiding.

L. M. KAGY, and VANHOOREBEKE & LOUDEN, for appellant.

FRANK F. NOLEMAN, and W. F. BUNDY, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Charles Denman, husband of appellee, an employee in the coal mine owned and operated by the appellant company, was killed by falling into the opening of the shaft at the surface of the ground and thence to the bottom of the mine. The appellee recovered judgment against the appellant company in the circuit court of Marion county in the sum of $2000 on a declaration which, in the first count, charged the deceased came to his death by reason of the "willful failure" of the appellant company to furnish a sufficient light at the top of the shaft of the mine, as required by section 6 of chapter 93, entitled "Miners," (Hurd's Stat. 1889, p. 929,) and, in the fourth count, that the death of the decedent was occasioned by the "willful failure" of the appellant company to securely fence the top of the shaft by gates properly protecting the shaft, as is required by section 8 of the same chapter of the statute. The declaration contained other counts, but the verdict was rendered on the said first and fourth counts. The judgment was affirmed by the Appellate Court for the Fourth District, and this is a further appeal perfected to this court.

Deceased was one of a force of men called the "night shift," employed by the appellant company to work in the mine during the night. When going down the shaft of the mine the night shift entered the cage at the opening of the shaft at the surface of the ground, and when coming out they left the cage at the same opening. The company did not maintain a light at this opening of the shaft. It had, however, directed an employee to carry a lantern when its employees, the night shift, were going into or coming out of the cage at this opening, and

had arranged the windows of the engine room, which was some fifty or sixty feet away, so that light from that room would shine in the direction of this opening of the shaft. A fence had been constructed around a lot or space some ten feet wide and twenty feet long, and the opening of the shaft was within this enclosure. This fence was not erected for the purposes of protecting the opening of the shaft or as being in compliance with the statute, but for the purpose of enclosing a lot for the storage of hay and feed intended to be lowered into the mine. The company had constructed above the surface of the opening of the shaft an unenclosed framework of timbers, which supported a structure called the "tipple house," some twenty feet above the ground. These timbers composing the framework on which the tipple house rested were supplied with "slides and guides" for the cages, and the cages and coal brought out of the mine through the shaft could be hoisted to the tipple house. The "day shift" of workmen were accustomed to enter and leave the cages at the tipple house. Coal brought out of the mine was hoisted to the tipple house and there distributed to the screens, cars, etc., but coal was not brought out of the mine except in the day time. The appliances for raising and lowering the cages enabled the company to move the cages from the tipple house to the bottom of the shaft. On the occasion in question the husband of appellee and the other workmen composing the night shift, after the hours of work for the night were over, were hoisted from the bottom of the shaft in a cage to the opening of the shaft at the surface of the ground. It was yet dark and there was no one there with a lantern. In endeavoring to alight, the husband of appellee fell into the shaft and was precipitated to the bottom of the mine, a distance of 600 or 700 feet, and instantly killed. These are, in substance, the facts necessary to be known in order to determine whether the court erred

in refusing the motion of the defendant company to direct a verdict in its favor.

The statute relied upon by the appellee are sections 6, 8 and 14 of chapter 93. These sections read as follows:

"Sec. 6. * * * A sufficient light shall be furnished at the top and bottom of the shaft to insure as far as possible the safety of persons getting on or off the cage."

"Sec. 8. * * * The top of each and every shaft and the entrance to each and every intermediate working vein shall be securely fenced by gates, properly protecting such shaft and the entrance thereto."

"Sec. 14. For any injury to person or property occasioned by any willful violations of this act or willful failure to comply with any of its provisions, a right of action shall accrue," etc.

The contention of the appellant company is, (1) that the top of the shaft of its mine is not the opening of the shaft at the surface of the ground, but that the landing at the tipple house, where the cages and the coal are hoisted, is the top of the shaft to which the provisions of the statute apply; and (2) that, even if the opening of the shaft at the surface of the ground should be deemed the top of the shaft, there is an entire absence of proof of willful failure to comply with the requirements of the statute; and (3) that the evidence did not tend to establish the proximate cause of the death of the deceased was the alleged omission of the company to comply with the requirements of the statute.

If the "top of the shaft" of a coal mine is not the opening of the shaft at the surface of the ground, it is for the reason the construction of the structure around about such opening of the shaft, and the manner and mode of operating, entering and departing from the cages and delivery of coal from the shaft, have established the actual top of the shaft at some point above the surface of the ground. The most favorable view for the appellant company was that taken by the trial judge in ruling upon

the motion and passing on the instructions given to the jury, that the top of the shaft in this instance was to be determined by the jury as a question of fact. The tendencies of the evidence on the point demanded the submission of the question to the jury.

The appellant company stood charged with knowledge of the provisions of the law and with the duty of complying therewith. In operating its mine it employed the landing of the shaft at the surface of the ground in such manner as to expose the deceased and his fellow-workmen to all the perils which induced the enactment of the statutory provisions here involved. It recognized the existence of such perils, but instead of complying with the law and employing the means enjoined upon it by the legislature to protect its employees against those dangers, substituted other methods,—that is, it did not, in obedience to the statute, have the landing which it devoted to the uses of the "top of a shaft" furnished with a "sufficient light" to enable workmen to alight from the cage in the night time, but substituted the plan of ordering one of its servants to go to the landing with a lantern when the cages brought workmen from the mine to the surface of the ground. The omission was not through mere inadvertence, but was intentional. There was no evil intent operating to induce the failure, but that element is not a necessary ingredient of willfulness, within the correct meaning of the word "willful" as employed in this statute. As used in criminal and penal statutes, the word "willful" has frequently been interpreted to mean, not merely a voluntary act but an act committed with evil intent, etc. The statute here involved is not a penal statute. The recovery awarded is not a penalty in the nature of a fine or a forfeiture, nor is it awarded as a punishment, but is confined, by the express terms of section 14 of said chapter 93, to "the direct damages sustained" by reason of the omission or failure of which complaint is made. Compensation for injuries inflicted—

185—27

not punishment—is the ground of recovery. "'Willful' is a word of familiar use in every branch of law, and although in some branches of law it may have a special meaning, it generally, as used in courts of law, implies nothing blamable, but merely that the person of whose action or default the expression is used is a free agent, and that what has been done arises from the spontaneous action of his will. It amounts to nothing more than this: that he knows what he is doing and intends to do what he is doing, and is a free agent." (29 Am. & Eng. Ency. of Law, 113.) An act consciously omitted is willfully omitted, in the meaning of the word "willful," as used in these enactments of our legislature relative to the duty of mine owners. In *Carterville Coal Co.* v. *Abbott,* 181 Ill. 495, we said (p. 502): "Where an owner, operator or manager so constructs or equips his mine that he knowingly operates it without conforming to the provisions of this act, he willfully disregards its provisions and willfully disregards the safety of miners employed therein."

It is true, it is not sufficient, to maintain an action of this character, to establish merely a willful omission of statutory duty. It is necessary the injury complained of shall have resulted from the omission,—that the omission was the proximate cause of the injury. The testimony tended to show the occupants of the cage intended to leave the cage at the opening of the shaft at the surface of the ground, and that the deceased supposed the position of the cage was such he could step from the cage to the ground. The evidence tended to show the cage had passed above the level of the ground when the deceased sought to alight, and he did not gain secure footing on the ground and fell into the shaft. The servant of the company who, it is insisted, was charged with the duty of bringing a lantern to enable the occupants to alight with safety was not there. It was yet dark. There was no light there. There was a light in the engine

room, some fifty or sixty feet away, or is most probable there was, but the landing and mouth of the shaft were enveloped in darkness. Certainly there is no room for the contention the tendencies of the evidence were insufficient to warrant the submission to the jury of the question whether the proximate cause of the death of the deceased was the absence of a "sufficient light," to adopt the words of the statute with reference to the duty of the mine owner to supply a light at the top of the shaft of a mine. Even if the true or more immediate cause of the injury was the act of the deceased in stepping from the car after it had passed the landing, still the existing condition of darkness may have been the proximate cause of the injury. (5 Am. & Eng. Ency. of Law, p. 11.) In this connection it must also be borne in mind the doctrine of contributory negligence cannot be invoked by the appellant company. *Carterville Coal Co.* v. *Abbott, supra.*

The motion to exclude the evidence and direct a verdict for the company was properly denied.

It was not error to refuse to allow the president and superintendent of the appellant company to testify that they in good faith intended to comply with the provisions of the statute. The averments of the declaration the omission to observe the requirements of the statute were willful, did not, as we have seen, involve a charge of evil or wrongful intent, but only that the omissions were conscious acts of the mind and were not from mere inadvertence. In criminal proceedings, where it is designed to punish the defendant, and in that class of civil cases where a penalty is provided the amount whereof is fixed by statute as in the nature of punishment, or in those cases where, in addition to damages recoverable as indemnity to the plaintiff for the injury sustained, exemplary or vindictive damages may be assessed as punishment of the defendant, the intent of the defendant becomes material. In all cases in those classes the word "willful" is interpreted to include malice, evil intention

or other wrongful motive. In the case at bar the recovery is limited to actual or direct damages, and the amount to be recovered is not to be mitigated or aggravated by the presence or absence of the element of fraud, malice or evil intent. The word "willful," employed in pleadings in proceedings of this character, does not import any blameworthy motive and no issue of intent arises.

We need not notice in detail other objections preferred to the action of the court in admitting or excluding testimony and in granting or refusing instructions. They involve only the principles of law already herein discussed.

The judgment is affirmed.          *Judgment affirmed.*