NANNIE MILES, Widow of G. M. MILES, Deceased, and LUCENA MILES and MARGUERITE MILES, Minors, Lineal Heirs of G. M. MILES, Deceased, by NANNIE MILES, Their Next Friend, Respondents, v. THE CENTRAL COAL & COKE COMPANY, Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. NEGLIGENCE: Mines and Mining: Master and Servant: Signals. The plaintiffs sued to recover for damages for the death of Miles in the defendant's coal mine. Miles was a miner employed by the defendant as a cager and with another miner by the name of Monay was engaged in loading and unloading the elevator at the bottom of a shaft. A week or so before the accident the superintendent ordered a change in signals for lifting and lowering the cage, which tended to make the operation of the cage more hazardous. *Held,* that the

injury was caused by a natural and even inevitable result of a dangerous and negligent method that the defendant required the deceased to follow.

2. ———: ———: ———: Reasonable Care. A master is not bound to provide his servant with the safest and best tools or the safest place to work, nor must he prescribe the safest method for doing his work. He has the right to conduct his own business in his own way as long as he conducts it with reasonable care and he may adopt any method that suits his convenience or fancy, whether or not it be in general use, or as safe as some other, provided it be reasonably safe.

3. ———: ———: Statutes or Municipal Ordinances. The negligent violation of statutes or municipal ordinances defining reasonable care in the operation of agencies that may inflict injury if not properly used, is negligence *per se*.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

Affirmed.

*Massey Holmes* and *Farris & Farris* for appellant.

(1) The Kansas statute pleaded in the plaintiffs' petition refers to physical appliances and not to the manner of using these appliances, and there being neither averment nor proof that any of the appliances required by the statute were not maintained, this action must fail. Pennsylvania Statute of June 2, 1891, sec. 111 (3 Purdon's Digest, 13 Ed., page 2568); same Act. sec. 204 (Id., page 2577); Pennsylvania Act of May 15, 1893, set out in 3 Purdon's Digest, p. 2586; Pennsylvania Act of March 3, 1870 (2 Brightly's Purdon's Digest, p. 1181 [1883]); Act of April 22, 1870, sec. 22 (Ibid., p. 1182); Session Laws of Pennsylvania, 1911; Act of June 7, 1911, at p. 777, Article VIII, section 1; Same, at p. 830, Article XXVI, section 1; Hurd's Revised Statutes of Illinois, p. 1439, chapter 93 (1908), section 23; Same, section 28, p. 1440; Illinois Laws of 1911, p. 402 (Hurd's Rev. Stat. 1911, chap. 93, p.

1551); Illinois Laws of 1911, p. 413 (Act of June 6, 1911, section 22); Same, p. 407, section 15; Hurd's Rev. Stat. (Illinois), 1874, p. 705 (Act of March 27, 1872); West Virginia, Code 1906 (Annotated), section 408; West Virginia Code Annotated (1909, Supplement), p. 501, section 9; Iowa Statutes, Session Laws of 1911, chap. 106, p. 116; Chap. 202 of Acts of 18th General Assembly of Iowa, which took effect July 4, 1880 (McLain's Anno. Stats. of Iowa, 1880), p. 445, section 11; Iowa Code Anno. (1897), section 2489; Session Laws of 1911, p. 113, chapter 106, section 28 (Iowa); Ohio Laws of 1910, section 28, p. 68 (Approved April 11, 1910); Durant v. Mining Co., 97 Mo. 64; Saversnick v. Swarzschild & Sulzberger Co., 141 Mo. App. 513; Hollingsworth v. National Biscuit Co., 114 Mo. App. 23, 24. (2) Assuming that the act of the appellant company in ordering or permitting the change from single belling to cross belling, as charged in the petition, was an act of negligence towards Miles, such act of negligence was not the proximate cause of the injury to Miles. The proximate and immediate cause was the intervening active negligence of Miles' fellow-servant, James Monay, in carelessly giving the signal to hoist the cage before the car was fastened on the cage. Rich v. Electric Co. (May, 1910), 152 N. C. 689, 68 S. E. 232, 30 L. R. A. (N. S.) 428; Kelley v. Railroad, 75 Mo. 138; Butz v. Cavanaugh, 137 Mo. 503; Kappes v. Shoe Co., 116 Mo. App. 171; Bridge Co. v. Seeds (C. C. A. 8th Cir. 1906), 144 Fed. 605, 11 L. R. A. (N. S.) 1041; Browning v. Railroad, 124 Mo. 55; Railroad v. Perigeuy, 34 N. E. (Ind. Sup. Ct.), 233; Trewatha v. Buchanan, etc., Co., 28 Pac. (Cal. Sup.) 571; Roe v. Thomason, 61 S. W. (Civ. App. Texas, 1901), 528; Rose v. Railroad, 17 S. W. (Tex. Sup. 1891) 789; Berns v. Gaston, etc., Co., 27 W. Va. 285, 55 Am. Rep. 304; Relyea v. R. R. Co., 112 Mo. 86; Railroad v. Woolley, 28 So. (Miss. Sup. 1900) 26; Hoffman v. Clough, 17 Atl. (Pa. Sup. 1889) 19; Traner v. Mining Co., 148

S. W. (Mo. Sup., May, 1912) 70; Hoover v. Ry. Co. (Pa. Sup. 1899), 43 Atl. (Pa. Sup. 1889) 74. (3) Miles was, as a matter of law, guilty of contributory negligence in going upon the cage at the time and under the circumstances of the injury. Hurst v. Railroad, 163 Mo. 309; Mathews v. Railroad, 227 Mo. 241. (4) It was error for the trial court to refuse to give defendant's instruction number 7 in the form requested and to modify the same by expunging therefrom the words, "or if he relied partly upon such assurance and partly upon his own judgment that he would not incur danger by the use of such system." Knorpp v. Wagner, 195 Mo. 637. (5) It was error to instruct the jury, as was done in plaintiff's instructions No. 6 and 7, that Miles was not guilty of contributory negligence unless the danger threatened was so "immediate" and "glaring" and "obvious" that a person of ordinary care would have refused to work, etc. This virtually deprived defendant of the benefit of its plea of contributory negligence. Bradley v. Railroad, 138 Mo. 293; Bennett v. Lime Co., 146 Mo. App. 578.

*Lavelock & Kirkpatrick* and *Wheeler & Denison* for respondents.

(1) No exception by appellant here, defendant below, to the overruling of motion for a new trial is exhibited in bill of exceptions, therefore there is nothing to be considered by this court here. McKee v. Dry Goods Co., 152 Mo. App. 247; Monroe v. United Railways Co., 154 Mo. App. 39; Flowers v. Raupp, 87 Mo. App. 454; State v. Weinegard, 168 Mo. 491; Perry v. Wheler, 63 Kan. 870, 66 Pac. 1007; Terre Haute v. Fargan, 21 Ind. App. 371, 52 N. E. 457; Achenbach v. Pollock, 64 Neb. 436, 90 N. W. 304; Ross v. Railroad, 141 Mo. 390, 395; State v. Waer, 145 Mo. 162, 204, 205; Critchfield v. Linville, 140 Mo. 191, 192; State v. Taylor, 134 Mo. 107, 137; State v. Prather, 136 Mo.

20, 25. (2) Violation of the Kansas statute by defendant, requiring that there should also be maintained between the top and bottom of the shaft, the ordinary means of signaling, is negligence *per se.* Brannock v. Elmore, 114 Mo. 55; Schlereth v. Railroad, 96 Mo. 509; Karle v. Railroad, 55 Mo. 476; Railroad v. Kennedy, 2 Kan. App. 693; Erb v. Morash, 8 Kan. App. 61. (3) The petition originally filed in this action in the court below, contains a count of both common law and statutory grounds of negligence. 1 Bates Pleading, Practice, Parties and Forms, 227; Jarrett v. Apple, 31 Kan. 693; Gebhardt v. Transit Co., 97 Mo. App. 374. (4) The Kansas statute pleaded in plaintiff's petition in the court below, requiring the ordinary means of signaling between the top and bottom of the shaft, means not only the physical appliance itself, by which a signal can be produced, but also the necessary force to operate it. Bodie v. Railroad, 39 S. E. (S. C.) 715; 5 Words and Phrases, page 4454; 1 Words and Phrases, 455; 3 Wood on Railway Law, 1487; 36 Cyc., 1108. (5) The proximate and primary cause of Miles' death was the maintaining of a cross belling system, and not any intervening negligence on the part of Miles' fellow-servant, James Monay. Sherman & Redfield on the Law of Negligence, 5 Ed., sec. 234; Reagan v. Railroad, 93 Mo. 348; 1 Master and Servant, Labatt, sec. 207; Railroad v. Watts, 63 Tex. 549; McKillip v. Railroad, 23 Sc. Sess. Cas., 4th Series, 768; Gibson v. Nimmo, 22 Sc. Sess. Cas., 4th Series, 491; Waller v. Railroad, 50 Mo. App. 410; Meade v. Railroad, 68 Mo. App. 92. (6) Miles as a matter of law was not guilty of contributory negligence contributing to his death. Shortel v. St. Joseph, 104 Mo. 115; Steinhauser v. Spraul, 114 Mo. 551; Stephen v. Railroad, 96 Mo. 207; Wurtenburger v. Railroad, 68 Kan. 642. (7) It was not error for the trial court to refuse defendant's instruction 7, and to modify the same by expunging therefrom the words ''or if he re-

lied partly upon such assurance and partly upon his own judgment that he would not incur danger by the use of such system." Cole v. Transit Co., 81 S. W. (Mo.) 1138; 1 Master and Servant, Labatt, 1264, 1270; citing Aldridge v. Furnace Co., 78 Mo. 559; Monohan v. Clay & Coal Co., 58 Mo. App. 68. (8) It was not error for the trial court to give instructions 6 and 7 requested by plaintiff that Miles was not guilty of contributory negligence unless the danger threatened was so obvious and glaring as to threaten immediate injury. Wurtenberger v. Railroad, 68 Kan. 643; Young v. Railroad, 82 Kan. 333; Stephens v. Railroad, 96 Mo. 207.

JOHNSON, J.—Plaintiffs, who are the widow and heirs-at-law of G. M. Miles, deceased, instituted this action against defendant to recover damages on the ground that the death of Miles, which occurred May 10, 1911, in a coal mine operated by defendant in Crawford county, Kansas, was caused by defendant's negligence. In addition to a general denial the answer pleads contributory negligence, assumed risk and that the death of Miles was caused by negligence of a fellow-servant. Miles was a miner of many years experience and was employed in defendant's mine as a cager. He and another miner, named Monay, were stationed at the bottom of the shaft at the hoist and their duty was to put on and remove from the cages loaded and empty coal cars used in the transportation of coal from the bottom to the top of the shaft. The shaft was 125 feet deep and approximately 600 tons of coal was carried to the top each day. Two cages moving up and down the shaft in adjoining compartments were used in carrying this output. Steam power raised and lowered them and the engine was at the top near the mouth of the shaft. The engineer moved the cages only on signals from the cagers and the means of communication consisted of a speaking

tube and a bell in the engine room which was connected by wire with the bottom of the shaft and was rung by the cagers, each of whom from his station. could ring the bell and thus signal the engineer.

The cages were so operated that while one carrying the loaded car was being hoisted, the other returning an unloaded car was being sent to the bottom. There was room in each cage for only one car and the car stood on a track laid in the floor of the cage of the same gauge as tramways that ran from the foot of the shaft into the mine. There was a sump or pit at the bottom of the shaft that allowed the floors of a cage to be lowered to a level with the floor of the mine and its tracks to be brought into alignment with the tramways. When a cage reached the bottom the empty car was pulled on to a connecting tramway by one cager and at the same time the other cager pushed a loaded car on the cage from the opposite direction. The two worked on opposite sides of the cage which was about five feet wide. It was the duty of the cager who handled the loaded car to lock it after pushing it to its proper position on the floor of the cage. The length of the car was about the same as the interior width of the cage and it was essential to lock the wheels to prevent the car from moving on the track while the cage was being hoisted. The locking device was called "a dog" and was operated by pushing a lever sidewise with the foot. The men worked with great celerity. In lifting 600 tons of coal from the mine in a day a car would be loaded on the cage, hoisted, unloaded and returned to the bottom in from twelve to fifteen seconds of time. Often the loaded car followed so closely after the empty car as to aid in its removal from the cage, and as soon as the loaded car reached its proper place the cager handling it would kick the locking lever and stop the car in place, then the hoisting bell would be rung and the cage would be hoisted. Sometimes the cager would miss the lever

and not throw the "dog" in which case the car would run beyond its proper place to the opposite tramway and sometimes the car would be pushed on at too great speed and the wheels would jump or ride over the "dog" and the car would go on. In such cases it would be returned to its proper place by the joint efforts of the two cagers, the one pulling back on one end and the other pushing on the opposite end.

The evidence of plaintiffs tends to show that the usual method of signalling with the bell and, in fact, the only safe method, allowed each cager the privilege of giving the hoisting signal when he performed the task of handling and "dogging" a loaded car. This was called "single belling;" and further that about three weeks before Miles was killed, the superintendent of the mine ordered the cagers to change that method to what is known as "cross belling." The latter method required the cager who handled the empty car to give the hoisting signal and the reason given for the change was that it would expedite the work. Miles pushed a loaded car on the cage and kicked at the "dog" but missed it. He stepped on the floor of the cage in an effort to pull the car back to its proper place. At the instant he did this Monay gave the hoisting signal and the car shot upward, carrying Miles, who was crushed to death between the cage and one of its surrounding timbers. There is a conflict in the evidence over the issue of whether Monay could note the operation of the "dog" from his position. Witnesses for plaintiffs say he could not and in the determination of the questions we are asked to solve we must give conclusive effect to that evidence. Moreover all of the witnesses for plaintiffs who are miners and some of the witnesses introduced by defendant testified that the "single belling" method was the one ordinarily used in coal mines in Kansas and that "cross belling" is more dangerous for the reason that it requires each cager to depend on the care of his co-

laborer instead of his own care in the use of signals, on the careful use of which his safety depends. One witness for defendant stated on cross examination: "I won't allow nobody to cross bell my cage. Q. Why? A. Just because I won't have it. Q. Have you got any reason? A. I put my own car off and I can put it on and I can bell it. Q. Why do you? A. Because it is on my side of the shaft; my place to bell it."

Another of defendant's witnesses testified: "Q. I will ask you if there was any more danger in using that method or system of cross belling than in the system of each man belling for himself. A. If you used certain precautions there was no more danger. Q. What precautions would be necessary? A. To see that the cars were properly dogged before ringing the bell."

The sum of the great weight of the evidence on this subject is that the risk of giving a premature hoisting signal was greatly enhanced by, and, indeed, was peculiar to the "cross belling" system. The engineer would not hoist a cage except on signal; there would be no danger of the cager loading a car giving the signal until the car was in place and properly locked while under the "cross belling" system, there always would be the risk of the off cager giving a premature signal under the mistaken belief that the car was properly locked in the cage.

The gravamen of the cause of action pleaded in the petition is negligence of defendant in prescribing a method of signalling that was less safe than the ordinary method and it is the contention of plaintiffs that such negligence was the proximate cause of Miles' death. There is some discussion in the briefs and arguments over the question of whether the petition charges both common law and statutory negligence, but that question may be passed without discussion in the view we have of the case and we shall treat the

petition as presenting no other than a statutory cause. Such is the theory of the case expressed in the instructions given at the request of plaintiffs in which the jury were directed to return a verdict for them on finding that the death of Miles "resulted in direct consequence of the adoption of a means of signalling from the bottom to the top of said shaft not ordinarily used in the operation of coal mines in the State of Kansas and that such different means, if any, was more dangerous than those ordinarily in use in said State."

The test of liability in an action by a servant against his master for common law negligence is not whether the method of doing the work prescribed by the master is less safe than the ordinary method, but whether it is reasonably safe. A master is not bound to provide his servant with the safest and best tools or the safest place of work, nor must he prescribe the safest method for doing his work. He has a right to conduct his own business in his own way as long as he conducts it with reasonable care and he may adopt any method that suits his convenience or fancy, whether or not it be in general use, or as safe as some other, provided it be reasonably safe. [Saversnick v. Packing Co., 141 Mo. App. 509; Hollingsworth v. Biscuit Co., 114 Mo. App. 20; Brunke v. Telegraph Co., 115 Mo. App. 36.] Since the case was not tried and submitted on the theory that it involved an issue of common law negligence, we shall not go into that issue and shall pass to the principal. question argued by counsel which is that of whether or not plaintiffs under the pleadings and proof were entitled to go to the jury on the issue of statutory negligence which, as we have shown, was the main issue submitted in the instructions.

The petition pleaded a negligent breach of the provision of the mining laws of Kansas which required that in shaft mines such as that operated by

defendant "there shall be maintained the ordinary means of signalling to and from the top and bottom of such shaft or slope." The meaning of this requirement is plain. It imposes the duty on the owners and operators of mines to install and use means of signalling that will equal in efficiency and safety the means that have the approval of general usage. We think the legislature of that State did not intend to lay down the rule that a mine owner could not install and employ means of signalling that would be better and safer than those in general use. Such rule would be too restrictive of progress and would tend to destroy, or, at least, greatly to impede, invention and should not be read into the statute by construction. But the provision quoted does clearly define the limits of reasonable care and says, in effect, that the use of means of signalling which are less safe than those approved by general usage is negligence, *per se.* The authority of the legisliative department of government to deal with the subject in such manner and to curtail the scope of the freedom the common law gives to a master in the discharge of his duty to exercise reasonable care to provide his servant with reasonably safe instrumentalities with which to work cannot be questioned, and we must give effect to the statute and say that plaintiffs were entitled to go to the jury on the hypothesis that defendant provided means of signalling that were less safe than those in ordinary use in the State. The rule is well settled that a negligent violation of statutes or municipal ordinances defining reasonable care in the operation of agencies that may inflict injury if not properly used is negligence *per se.* [Brannock v. Elmore, 114 Mo. 55; Schlereth v. Railway, 96 Mo. 509; Karle v. Railroad, 55 Mo. 476; Railway v. Kennedy, 2 Kan. App. 693.]

But it is argued by defendant that the term "ordinary means of signalling" refers to physical means, to the apparatus itself, and not to rules ordained by

the master which control the use of the apparatus by the servants. We think this view of the legislative purpose the enactment was designed to serve is entirely too narrow. That purpose was to require mine owners to provide their servants with reasonably safe and efficient means for signalling through the shaft in order that the safety of the miners might be promoted and better guarded than before. The apparatus itself would not satisfy this purpose if it were not properly employed. Suppose defendant had forbade the cagers from using either bell or speaking tube at all, could it be said with reason that defendant had complied with the mandate of the statute because it had equipped the shaft with the physical means for signalling in general use? We think not and, further, we say that if it be true, as plaintiffs' evidence indicates, that defendant prescribed a peculiar and unusual rule for the use of the apparatus that impaired its usefulness and safety, then defendant failed to provide the ordinary means for signalling as that term should be understood and applied, and was guilty of negligence *per se*.

Further, it is contended by counsel for defendant that a peremptory instruction should have been given for the reason that Miles and Monay were fellow-servants, and that the negligence of Monay in giving the premature signal, and not the negligence of defendant in ordering an unsafe method of work, was the proximate cause of the injury. The premature signal clearly was a natural result of the negligent method which defendant should have anticipated as being likely to occur. The evidence of plaintiffs is to the effect that Monay did the best he could under the circumstances. He was in a position where he could not see whether or not the lock had been set aright and was compelled to act on appearances that might be deceptive. We look upon his act, under all the circumstances of his situation, as being not an independent, supervening cause of the injury, but as a natural

and even inevitable result of the dangerous and negligent method defendant required him to follow.

There is nothing in the point that Miles was guilty of contributory negligence. The jury were entitled to believe that an ordinarily careful man in his situation would have concluded that the danger was not so imminent and certain as to threaten immediate injury and on such hypothesis the issue of contributory negligence was one of fact for the jury to determine. Much stress is laid by defendant on the fact that Miles, in following the car, stepped on the cage, but it was for the jury to determine whether or not he was acting with reasonable care in so doing. Plaintiffs sustained their burden of proof and the court did not err in overruling the demurrer to the evidence. In what we have said, the objections to the rulings on the instructions are sufficiently answered. There is no prejudicial error in the record and the judgment should be affirmed. It is so ordered.

*Ellison, P. J.,* concurs; *Trimble, J.,* not sitting, having presided at the trial in the circuit court.