## EX PARTE DOUGLASS

### No. 2917

February 5, 1931.                                            295 P. 447.

**Writ dismissed, and petitioner remanded to custody.**

*Brown & Belford,* for Petitioner.

*M. A. Diskin,* Attorney-General, for Respondent.

## OPINION

By the Court, DUCKER, J.:

This is a proceeding upon habeas corpus. The petitioner alleges that he is illegally restrained by A. J. Stinson, and that his confinement is illegal, in this: That said Stinson pretends to confine petitioner under a warrant issued by the justice court of Ely Township in the county of White Pine, State of Nevada, for the alleged crime of violating section 10480, N. C. L., as amended, which warrant was issued by said justice court upon a complaint filed by Stinson as mining inspector of Nevada, and that said complaint does not

charge petitioner with any crime or criminal offense under the laws of the State of Nevada.

A copy of the complaint is annexed to the petition, and the charging part thereof is as follows:

"That the said defendant, William C. Douglass, at all times mentioned herein, was and now is, the managing agent of Consolidated Coppermines Corporation, which said corporation is engaged in mining and extracting copper ore within Ely Township, White Pine County, State of Nevada; that on July 7, 1930, said defendant, as managing agent of said corporation, did unlawfully, willfully and knowingly work through the Emma Shaft, which said Emma Shaft was a vertical shaft of a depth of more than five hundred (500) feet; that said shaft was then and there used for the purpose of hoisting and lowering employees of said company; that in the operation of said shaft skips were used upon which platforms have been placed for men to stand on when being hoisted or lowered, which platforms are not less than four feet from the top of said skips; that said skips are used for hoisting ore and waste and for lowering and hoisting employees when engaged in inspecting and cleaning the shafts, and, on occasions, a skip tender rides such skips; that the said skips so operated are not provided with any safety devices except as aforesaid; that said shaft has five compartments; that in one of such compartments there is an iron-bonneted safety cage with proper safety devices used in lowering and hoisting employees, materials and supplies; that the safety apparatus is securely fastened to said cage and is of sufficient strength apparently to hold the cage lowered at any depth to which the shaft may be sunk; that the skips above described and used and equipped as aforesaid are in two other compartments of said shaft:

"All of which is contrary to the form of the statute. * * * "

Respondent demurred to the petition upon the ground that it failed to state facts sufficient to warrant the court in granting the writ.

Section 10480, N. C. L., as amended (Stats. of 1913, at pp. 422 and 423), upon which the complaint is based, reads in part as follows:

"It shall be unlawful for any person or persons, company or companies, corporation or corporations, to sink or work through any vertical shaft, at a greater depth than three hundred and fifty feet, unless the said shaft shall be provided with an iron-bonneted safety cage, safety crosshead or safety skip, to be used in the lowering and hoisting of the employees of such person or persons, company or companies, corporation or corporations. The safety apparatus shall be securely fastened to the cage, crosshead or skip, and shall be of sufficient strength to hold the cage, crosshead or skip loaded at any depth to which the shaft may be sunk; provided, that where safety crosshead is used for other than sinking purposes the same shall be equipped with gates as provided by law for cages; and provided further, that where skips are used for other than sinking purposes platforms for men to stand on when being hoisted or lowered shall be placed in said skip not less than four feet from top of same and that an overhead bar be provided for the men to hold to. * * * "

It is contended that the complaint does not state facts showing an offense under the statute, for the reason that it is alleged that there was in one of the compartments of the Emma shaft an iron-bonneted safety cage, with proper safety devices used in lowering and hoisting employees. It is insisted that the statute is satisfied when a vertical shaft of the depth alleged is so equipped. This contention is based solely upon the fact that the language of the requirement for a safety apparatus is in the alternative.

The statute, as is seen, requires that the shaft shall be "provided with an iron-bonneted safety cage, safety crosshead or safety skip," and that "the safety apparatus shall be securely fastened to the cage, crosshead or skip." There is no other language in the statute that lends any support to the contention.

We think that the construction urged by petitioner

is too narrow to give effect to the purpose of the statute. The sole purpose is to furnish protection to men whose employment requires them to be lowered and hoisted in such shafts. It was declared to be a remedial statute in Ryan v. Manhattan M. Co., 38 Nev. 92, 145 P. 907, and its purpose to safeguard life and limb of those who, in pursuit of their vocation, are called upon to go into places where danger is attendant every moment.

■ It is a cardinal rule of construction that the purpose of a law is to be kept in view and the statute given a fair and reasonable construction with a view to effecting its purpose and object. The purpose of the statute under consideration, so manifestly appearing from its terms, would be largely defeated if petitioner's view is allowed to prevail. Employees lowered or hoisted on any one of the three kinds of equipment described by the statute not having a safety apparatus securely fastened to it would be without the protection which the legislature deems such safety device is reasonably calculated to afford.

■ In our opinion, the amendment of 1913 was designed to extend the protection of the statute to employees lowered and hoisted in such shafts by other means than in a cage. The statute prior to its amendment provided only for an iron - bonneted safety cage to be used in lowering and hoisting employees in such shafts. Section 10480, N. C. L. Certainly it could not have been intended by the amendment to relieve the employer working through such a shaft with a cage and crosshead or skip from equipping the former with a safety apparatus in case the latter were so equipped. Yet such would be the effect of the statute if it is given the construction contended for by petitioner. He contends, as we have stated, that, because the statute providing for an iron-bonneted safety cage, safety crosshead, or safety skip to be used in lowering or hoisting employees is in the alternative, he has satisfied its requirements by providing the former. If this conclusion should be granted, then the converse must be true, and in any case where a safety skip is used for

lowering and hoisting employees a cage might also be used without the safety apparatus required by the statute. Such a construction would be opposed to the manifestly protective purpose of the statute.

It has been held that statutes of this character should be liberally construed. Welch v. Kansas City Midland Coal & Mining Co., 151 Mo. App. 438, 132 S. W. 49; Osterholm v. Boston & Montana C. C. & S. Min. Co., 40 Mont. 508, 107 P. 499.

But under any construction, strict or liberal, the language of the statute seems plainly to indicate the intention to require a safety apparatus for a cage, crosshead, or skip, when either of these devices is used in lowering or hoisting employees. The requirement is clearly designed as an additional safeguard to life and limb to those required in the provisos.

■ The complaint shows that skips are used in said shaft for lowering and hoisting employees without being equipped with the required safety apparatus. These and the other allegations of the complaint are admitted by the demurrer. They show the commission of an offense by petitioner.

The writ is therefore dismissed, and petitioner is ordered remanded to the custody of said A. J. Stinson.